## Cameron v. Farrell Area School District

*Daniel F. Solomon*, for plaintiffs.
*Edward Turosky*, for defendant.

STRANAHAN, *P. J.*, November 13, 1975—This court having conducted a hearing in this matter, makes the following findings of fact:

1. The Farrell Area School District encompasses Farrell, Pa., and has located in one of its buildings a swimming pool.

2. As a part of the physical education program of the Farrell Area School District, a student is required each year to take a course in swimming at the high school pool. This course is compulsory and a portion of the grade for the physical education program depends on the swimming course.

3. The Farrell Area School District has determined that, for sanitary purposes and other reasons, it will require each student to use bathing suits and towels which are provided by the school district. A student is not permitted to wear his bathing suit or use his own towel while participating in the program.

4. A charge of $3 is made by the Farrell Area School District for the use of the bathing suits and towels. Each student is provided with a clean bathing suit for each swimming period and a clean towel is provided after the swimming period is concluded.

5. The school district does not make a profit for

this service, but, rather, applies the $3 received from each student to the replacement of worn out bathing suits and towels.

6. John L. Cameron was born January 19, 1960, and resides at 137 Spearman Avenue, Farrell, Pa., with his mother, JoAnn Cameron. He is a student attending the Middle School of the Farrell School District and is required to participate in the swimming program. Keith Cameron was born February 18, 1961, and lives at 128 Spearman Avenue, Farrell, Pa., and is a student in the Farrell Middle School and is required to take swimming as a part of the physical education program. Keith Cameron is also a child of JoAnn Cameron.

7. JoAnn Cameron is a poor person being on Public Welfare and receiving a grant of approximately $340 a month which she uses to support herself and her three children. Her monthly bills and expenses are approximately equal to her income.

8. There are other students in the Farrell Middle School District who are the children of poor people who are on Public Welfare and have no assets.

9. The Superintendent of the Farrell School District, as a result of a policy adopted by the school board, requires each child to pay $3 as a swimming fee. The Farrell Area School District officials have made an effort to collect this fee by advising the students who had failed to pay the fee that their report cards would be withheld from them and that they might not be promoted unless the fee is paid. This threat has never been carried out, but is used because many of the students are dilatory in paying the fee. It's the policy of the school district that, if a child is from an indigent home and discusses this with the principal of the school, the fee will be exonerated.

10. Many students in the Farrell Area School District participate in the free lunch program because of the lack of income in the homes of their parents, and the Farrell School District is aware of what students are permitted to receive subsidized lunches.

11. A letter was sent by the Farrell Area School District to the parents of students who had failed to pay their swimming fees indicating that, if the fees were not paid, the students' scheduling would be held up, their report cards would not be received and their advancement to the next grade level would be in jeopardy. The Superintendent of the Farrell Area School District did not authorize this letter to be sent and, upon learning of it, he discontinued this practice.

12. In the physical education program of the Farrell Area School District students are required to provide their own gym suits and tennis shoes. All of the suits are to be of a uniform type. It is possible that a student may wear a different type of gym suit, but, if this is done, the student is disciplined in some manner. The cost of providing a gym suit and shoes is borne by each student.

13. This suit is brought as a class action on behalf of all indigent children of the Farrell Area School District who are unable to pay a swimming fee, and this class is too numerous to join as individual plaintiffs.

## DISCUSSION

This is an action in equity in which plaintiffs are bringing a suit on their own behalf and as a part of a class of indigent students and parents of students attending the Farrell schools and who are required to pay a $3 swimming fee.

The issue involved in this case is a narrow one and simply stated is whether or not the charging of a fee of $3 is a violation of the School Code. It is argued by plaintiffs that this fee is, in essence, tuition and, therefore, this court should prohibit the assessment of the fee in the Farrell School District.

We cannot help but feel that plaintiff is trying to make more out of this case than actually exists. The Constitution of the Commonwealth of Pennsylvania in article III, sec. 14, provides as follows: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." This section of the Constitution certainly does not say that no parent can be charged a fee by the school. Neither the word "maintenance" nor the word "support" carries with it a connotation that there shall be no fee charged.

Turning to the Public School Code of March 10, 1949, P.L. 30, we find in section 801, 24 P.S. §8-801, a provision that requires the board of school directors of each school district to purchase and furnish, free of cost for use in the schools, furniture, equipment, books, school supplies and other appliances.

Our examination of the law does not indicate that a bathing suit or a towel comes under the category of furniture, equipment, books, school supplies or other appliances.

Obviously, a bathing suit and towel are not furniture nor are they books or appliances. We believe the word "equipment" refers to items necessary to operate a school such as drinking fountains, stoves, refrigerators, etc. We are then left with the question of whether "school supplies" includes bathing suits and towels. We are of the opinion they do not.

In 1949, when the present Public School Code was enacted there were few, if any, public schools with swimming pools. There were physical education programs that required gym suits and other equipment. Admittedly, there may be schools that permit students to wear different types of gym equipment, provided it is suitable but the fact remains that some type of physical education attire must be provided and worn by the student.

The authors of the Public School Code spelled out rather carefully those items that were free. No mention is made of particular clothing necessary to participate in physical education classes. We conclude that such clothing was not intended to be included. If it were, it would have been specifically mentioned in the code.

Our review of cases in other jurisdictions is not too helpful because, in some instances, the constitution of the State is different and in other cases the school code is not identical to the Pennsylvania code. These cases indicate that the charging of a fee for towels and other similar items is proper: Beck v. Board of Education of Harlem, 27 Ill. App. 3d 4, 325 N.E. 2d 640 (Ill. 1970); Hamer v. Board of Education, 569 Ill. App. 3d 663, 292 N.E. 2d 569 (Ill. 1973); Board of Education v. Sinclair, 66 Wis. 2d 179, 222 N.W. 2d 143 (Wisc. 1974).

We conclude that there is nothing in either the Pennsylvania Constitution or the Public School Code that prohibits the charging of a fee for a bathing suit and a towel.

Plaintiffs argue that discrimination against indigent students who are unable to pay the $3 fee violates their rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution. If such students were denied the right to participate in the swimming program or

were treated differently because of their inability to pay the fee, there might be merit to this argument. The facts do not bear this out because the school district waives the fee if the parents indicate indigency. This being so, we fail to see any constitutional problem: Vandevender v. Cassell, 208 S.E. 2d 436 (W.Va. 1974) is in accord.

We further hold that the school district has the right to require parents to fill out an "Inability to Pay Form" in order to provide the school district with a basis of determining whether indigency exists: Chandler v. South Bend Community School, 312 N.E. 2d 915 (Ind. 1974).

While we do not believe that the school can expel the student from the swimming program or prevent promotion from one grade to another if the form is not executed, we do feel that the school can adopt reasonable requirements to obtain information from the parents. Our opinion is that the Farrell School District has presently adopted a program that complies with the law.

We note that JoAnn Cameron, the mother of John L. Cameron, is a poor person, being dependent on public welfare. This does not excuse her from cooperating with the school. While the indigency of Mrs. Cameron is unfortunate, it certainly does not entitle her to purposefully refuse to provide the school with the information it needed to determine the ability of her children to pay the swimming fee.

## CONCLUSIONS OF LAW

1. The Constitution of Pennsylvania does not prevent the assessment of a fee for participation in required school activities.

2. The Public School Code does not require free use of swimming suits and towels.

3. If the school waives the fees of indigent stu-

dents upon proper proof, there is no violation of the Fourteenth Amendment of the United States Constitution.

4. An indigent student cannot be excluded or penalized for his indigency.

5. A school can take reasonable means to require parents to either pay the fee or fill out and return an Inability to Pay Form.

### DECREE NISI

And now, November 13, 1975, the request for an injunction in this matter is refused and the costs are assessed against the County of Mercer, it appearing to this court that petitioners are indigent.

It is further ordered that the Prothonotary of Mercer County shall give notice immediately of the filing of this decree and either party may, within 20 days after receipt of said decree, take exceptions to the conclusions of law, findings of fact and the decree of this court.

In the event no exceptions are filed to this decree nisi, then the prothonotary shall enter the contents of this decree as a final order and shall give notice of entry and filing the decree.